WATTAM v. INTERNATIONAL & G. N. R.
CO. (No. 1332.)

(Court of Civil Appeals of Texas. Texarkana.
May 22, 1914. Rehearing Denied
June 11, 1914.)

CARRIERS (§ 86*) — CARRIAGE OF FREIGHT —
FACILITIES FOR UNLOADING — OBLIGATION
OF PARTIES.

A carrier owes to a shipper the duty to
furnish him reasonable facilities for unloading,
but the shipper must exercise reasonable dili-
gence in unloading, and the carrier need not
permit him to use the car as a storehouse in
which to carry on his business as a seller on
the payment of demurrage charges.

[Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 316–322; Dec. Dig. § 86.*]

Appeal from District Court, Tarrant Coun-
ty; R. H. Buck, Judge.

Action by W. H. Wattam against the In-
ternational & Great Northern Railroad Com-
pany. From a judgment granting insuffi-
cient relief, plaintiff appeals. Affirmed.

Over appellee's line of railway and con-
necting lines appellant shipped a carload (600
bushels) of apples from Marionville, Mo., to
Bryan, Tex. After the apples were delivered
to him at Bryan appellant claimed the right
to sell them from the car in lots of from one
dozen to a wagonload each, and was proceed-
ing to exercise such a right, when appellee ob-
jected to its car, track, and right of way being
used for that purpose. Appellant persisted
in making such use of the car, and continued
to sell the apples. Appellee thereupon closed
and sealed the doors of the car, excluding
appellant therefrom, but at the time telling
him it would open the doors and permit him
to unload the apples whenever he desired to
do so. On the day after the appellee closed
and sealed the doors of the car appellant
opened the same and resumed the business he
had before engaged in of selling the apples
from it, and during the 14 or 15 days fol-
lowing continued selling the apples, until he
disposed of all of them. During this time
appellee moved the car from one place to an-
other in its yards, and so interfered with ap-
pellant in the use he was making of it. It
appeared from the testimony that if appellee
had not so moved the car nor otherwise have
interfered with appellant, he could have sold
the apples in about five days and at a greater
profit than he realized from the sales he made
of same. It also appeared from the testimony
that he incurred expenses he would not have
incurred had appellee not interfered, as it
did, with his use of the car and its premises
for the purpose of selling the apples. Ap-
pellant sought by his suit to recover of ap-
pellee $300 as actual damages he had suf-
fered, and $500 as exemplary damages. The
trial was before the court without a jury,
and resulted in a judgment in appellant's fa-
vor for $1. Appellant was not satisfied with
the recovery allowed him, and prosecuted
this appeal.

Zumwalt & Key, of Denton, for appellant.
Thompson & Barwise, of Ft. Worth, for ap-
pellee.

WILLSON, C. J. (after stating the facts as
above). In the absence of a contract where-
by it bound itself to do more (and it is not
pretended that there was such a contract),
the duty appellee owed to appellant was to
transport the apples to Bryan and there de-
liver them to him, furnishing him reasonable
facilities for unloading them from the car.
It seems from the testimony that appellee dis-
charged this duty. The duty appellant owed
appellee was to exercise reasonable diligence
in unloading the apples from the car and in
removing them from appellee's premises. It
seems from the testimony that appellee fail-
ed to discharge this duty, and that if error
was committed by the court below it was in
awarding appellant a recovery of even the
nominal damages adjudged in his favor. We
think appellant was mistaken in concluding
that because appellee was bound to furnish
him a car in which to transport his apples,
it also was bound, having furnished him the
car, to permit him, on the payment of demur-
rage charges of $1 a day, to use it as a store-
room in which to carry on his business as a
vender of apples. Appellee was not bound
to furnish him a car for such a purpose.
Furnishing cars for such a purpose is not
within the scope of the business common car-
riers engage in, and to require them to do
so might, and probably would, seriously in-
terfere with the discharge by them of du-
ties they owe the public.

The case of Miller v. Ry. Co., 88 Ga. 563,
15 S. E. 316, 18 L. R. A. 323, 30 Am. St.
Rep. 170, was unlike this, in that the ques-
tion there was as to the right of the railway
company to adopt and enforce a reasonable
regulation as to the time within which cars
might be unloaded by consignees without pay-
ing storage charges and to fix a rate to be
charged for the use of cars beyond that time,
but we think much of the reasoning of the
court in disposing of it is pertinent as an
answer to appellant's contention.

"The law," said the court in that case, "com-
pels the carrier to receive the goods of the pub-
lic, and to transport and deliver them within a
reasonable time. * * * To do this it is nec-
essary that the means of transportation shall
be under the carrier's control, and that, after
the duty of carriage has been performed, its
vehicles shall not be converted into storehous-
es, at the will of consignees, to remain such
indefinitely, and without compensation. If no
check could be placed upon such detention,
it is plain that the business of transpor-
tation would be at the mercy of private in-
terest or caprice, and that carriers, thus ham-
pered in their facilities and unable to see the
time or extent to which their vehicles would
be diverted from the work of carriage, could
not provide properly for the demands of traf-
fic, or perform with dispatch their legitimate
function. It would place upon the carrier the
burden and expense of supplying numerous ve-
hicles not needed for the hauling of freights,

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

thus requiring it to provide extra facilities, as well as to render extra service, without compensation beyond that received for transportation. It would result in the accumulation of cars on the carrier's tracks, and the obstruction in a greater or less degree of the movement and unloading of trains. Not only would loss ensue to the carrier, but consignees and shippers in general, and the people at large must suffer seriously from this hindrance to the due and regular course of transportation. In this matter the public have rights paramount to those of any individual or class of individuals, and the business of the common carrier must be so conducted as to subserve the general interest and convenience."

We think appellant has no cause to complain of the judgment, and it is affirmed.